UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 06-CR-10362-RWZ

UNITED STATES OF AMERICA

v.

DARREN FRANKLIN

MEMORANDUM & ORDER

September 8, 2021

ZOBEL, S.D.J.

On April 30, 2007, defendant Darren Franklin was convicted by a jury of
distributing cocaine base and being a felon in possession of ammunition.  He was
originally sentenced to a term of imprisonment of 360 months, which was reduced to
216 months on October 24, 2019 pursuant to amendment of the Fair Sentencing Act, 21
U.S.C. § 841.  In addition, he was sentenced to 12 years of supervised release with
conditions that he not commit another federal, state, or local crime, and that he not
associate with any person convicted of a felony unless given permission to do so by
Probation.  (Docket # 76 at 3).[1]  Defendant started the period of supervised release on
November 1, 2019 and is now accused of violating these two conditions of his release.

## I.    Findings of Fact

On August 19th and 20th, the court held an evidentiary hearing pertaining to the
alleged violations.  The evidence included a number of documents and the testimony of

---

[1] He was also prohibited from possessing a firearm or ammunition.

1

two witnesses: Officer Christian Donovan with the Quincy Police Department, and U.S. Probation Officer Kara Lightowler, defendant's Probation supervisor.

I find the facts as follows.

On the morning of March 17, 2021, Ms. Lightowler visited defendant's home. She encountered Ms. Nicola Clark, the mother of two of his children. Ms. Clark asked to speak with Ms. Lightowler privately. They were not able to do so that morning, but Ms. Clark requested and received Ms. Lightowler's business card.

Several hours later, after Ms. Lightowler had left the residence, Ms. Clark called 911. According to a transcript of the call, Ms. Clark reported that defendant had drugs and guns in his possession, as well as several thousand dollars in cash. (Ex. 8). More specifically, she stated that he had two guns in black bags. She also told the 911 dispatcher that she had tried to call his probation officer to report him but was unable to reach her. Ms. Clark expressed concern for the safety of her children and herself and stated that she wanted defendant to leave the house. She also reported her concern that defendant might try to "stash" the weapons and drugs because he had been outside and out of her line of sight for five minutes. Lastly, she told the dispatcher that she felt badly for calling the police knowing that defendant could face imprisonment, but said she did not know what else to do.

In response to the 911 call, Officer Donovan went to the house with a K9 dog trained to detect ammunition and firearms. He spoke with Ms. Clark, who told him that she had seen defendant with a black leather pouch which contained a gun. She further noted that he had been outside near his vehicle at one point, during which time she had lost sight of him. Because Ms. Clark also reported that defendant had shoved her

2

several times that morning, Officer Donovan reviewed a domestic violence checklist

with her.  He asked Ms. Clark if she had been the victim of domestic abuse by

defendant on previous occasions.  She responded that, several months prior, he had

been arguing with her in their kitchen.  When their seventeen-year-old son heard the

commotion, he tried to intervene.  Upset at the interruption, defendant raised and swung

a frying pan to strike his son and Ms. Clark stepped between them.  She did not file a

police report of the incident after it happened because, as she told Officer Donovan, she

did not want defendant to go back to prison.  Defendant, meanwhile, had been standing

near a vehicle parked in the driveway when the police arrived.

After Ms. Clark reported that defendant had shoved her, he was placed under

arrest.  Officer Donovan led the K9 outside to search the exterior of the property for

firearms.  When approaching the front porch of the house and the back of the vehicle

where defendant was standing (all within a five-foot radius), the dog began "bracketing"

in response to an odor.  Officer Donovan and another officer, Sergeant Duggan,

obtained defendant's consent to search the vehicle and porch.  Sergeant Duggan found

a "tackle box type container" on the porch that held two pouches, each of which

contained loaded semiautomatic pistols.  One of them was a Glock large capacity

firearm with a magazine capable of holding thirteen bullets.

On the day of defendant's arrest, Ms. Lightowler received a telephone call from

Ms. Stephanie Rivera, who said that she was in a relationship with defendant.[2]  She told

Ms. Lightowler that she had been on federal probation at one time.  Ms. Lightowler

---

[2] Ms. Lightowler testified that, at some point, Ms. Clark and Ms. Rivera became aware that defendant had been romantically involved with both of them.  In addition, Officer Donovan reported that Ms. Clark told him one reason for wanting defendant to leave the house was because she suspected he was having affairs with other women.

3

confirmed this by searching Probation records and saw that Ms. Rivera had been on supervised release until March 2018. The docket sheet in Ms. Rivera's case indicates that she was convicted of distributing cocaine base. (Ex. 2). Ms. Rivera did not tell Ms. Lightowler that defendant knew she was a convicted felon, nor did Ms. Lightowler ask Ms. Rivera or defendant whether he was aware of that fact.

A criminal complaint filed in Quincy District Court on March 18, 2021 charged defendant with several state crimes, including assault with a dangerous weapon, possession of a large capacity firearm, improper storage of a large capacity firearm, possession of a firearm without a firearm identification ("FID") card, and larceny. (Ex. 4). Defendant was later indicted on the firearms and larceny offenses only. (Ex. A).

## II.    Alleged Violations

As noted, the probation officer accused defendant of violating two conditions of supervised release: (1) that he not commit another federal, state, or local crime, and (2) that he not associate with a person convicted of a felony absent permission from Probation.

### A.    Violating Another Federal, State, or Local Crime

The Government cites defendant's March 2021 criminal complaint though it relies not only on those alleged state crimes, but also several federal crimes: possession and improper storage of a firearm, being a felon in possession of a firearm, and assault with a dangerous weapon.[3] The assault charge was later dropped, but the firearms charges are still pending in state court.

---

[3] Defendant has not been indicted for any federal crimes.

4

If a defendant on supervised release "commit[s] a new crime, even if they're not convicted (i.e., found guilty beyond a reasonable doubt after a full-dress trial or plea), a federal district court may find they more-likely-than-not committed it, revoke their supervised release, and send them back to prison." United States v. García-Cartagena, 953 F.3d 14, 15 (1st Cir. 2020); see United States v. Lapinski, No. 92-1867, 1993 U.S. App. LEXIS 10070, at *23 (1st Cir. May 3, 1993) (stating that "the revocation of supervised release does not require a conviction of a separate federal, state, or local crime.  Indeed, a violation of the standard condition of supervised release—that a defendant shall not commit another federal, state, or local crime—may be found whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct."); U.S.S.G. § 7B1.1, comment. (n.1) ("Under 18 U.S.C. §§ 3563(a)(1) and 3583(d), a mandatory condition of probation and supervised release is that the defendant not commit another federal, state, or local crime.  A violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct.").

Accordingly, this court may conclude that defendant committed a crime, regardless of any underlying charge or conviction, if it finds that the evidence presented at the revocation hearing supports that conclusion by a preponderance of the evidence. See United States v. Frederickson, 988 F.3d 76, 85 (1st Cir. 2021) ("To prove [defendant] violated the terms of his supervised release, the government needed only to show by a preponderance of the evidence that he committed a crime while on supervised release."); United States v. Rentas-Felix, 235 F. Supp. 3d 366, 381 (D.P.R. 2017) ("[T]he revoking court bases its decision, not on . . . [a] resulting state conviction,

but on the evidence presented at the revocation hearing." (citing <u>Lapinski</u>, 1993 U.S. App. LEXIS 10070, at *14)).

### 1.    Possession of a Firearm Without an FID Card[4]

Defendant was charged in state court with possessing a firearm without an FID card, in violation of Mass. Gen. Laws ch. 269, § 10(h)(1). "The statute requires anyone possessing a firearm, rifle, shotgun or ammunition to have been issued a[n] . . . FID card[]." <u>Gutierrez v. Ryan</u>, No. 14-cv-11995, 2015 U.S. Dist. LEXIS 145622, at *7 (D. Mass. Oct. 1, 2015). "'[F]irearm' shall mean any pistol, revolver, rifle or smoothbore arm from which a shot, bullet or pellet can be discharged." Mass. Gen. Laws ch. 269, § 10(j). "The elements of this offense are that the defendant (1) possessed, (2) a firearm, rifle, shotgun, or ammunition, (3) without complying with the FID card requirements." <u>Bone v. AG of Mass.</u>, 150 F. Supp. 3d 140, 149 (D. Mass. 2015). "Under the law of the Commonwealth, the 'absence of a license is not an element of the crime' of possessing or carrying a firearm in violation of G. L. c. 269, § 10(h). The burden is thus on a defendant to come forward with evidence that he possesses a valid

---

[4] Defendant was also charged with possession of a large capacity firearm, defined as holding more than ten rounds of ammunition. Mass. Gen. Laws ch. 269 § 10(m); <u>id.</u> ch. 140, § 121 (defining large capacity). "A conviction under G. L. c. 269, § 10(m), requires the Commonwealth to prove . . . 'that a defendant either knew the firearm or feeding device met the legal definition of "large capacity" or knew it was capable of holding more than ten rounds of ammunition.'" <u>Commonwealth v. Thompson</u>, No. 20-P-267, 2021 Mass. App. Unpub. LEXIS 378, at *3–4 (May 20, 2021) (quoting <u>Commonwealth v. Cassidy</u>, 96 N.E.3d 691, 695 (Mass. 2018)). Officer Donovan testified that the guns found in defendant's possession were loaded, and that one was a large capacity firearm capable of holding thirteen bullets. The Government did not, however, provide evidence supporting § 10(m)'s required knowledge element, such as whether defendant was seen loading the gun or whether he was familiar with that type of weapon and its capacity. <u>See id.</u> at *4 ("Moreover, because Officer Canning testified that the magazine was inserted in the firearm, 'the size of the magazine would not be apparent.' . . . . There was no evidence presented that the defendant loaded the firearm himself." (quoting <u>Commonwealth v. Resende</u>, 113 N.E.3d 347, 354 (Mass. App. Ct. 2018))).

license." Commonwealth v. Parzick, 835 N.E.2d 1171, 1176 (Mass. App. Ct. 2005) (citations omitted) (quoting Commonwealth v. Jones, 361 N.E.2d 1308 (Mass. 1977)).

The evidence in this case showed that Ms. Clark made three separate statements to three different individuals regarding her belief that defendant had guns in his possession.  See (Ex. 8 (911 call transcript); testimony of Officer Donovan and Ms. Lightowler).  She consistently described having seen two guns and stated that defendant kept the guns in black pouches.  The reliability of these statements is supported by the fact that two guns in black pouches were indeed found on the porch of defendant's home, feet from where he was standing when police arrived at the scene. Although the guns were not found on defendant's person, the evidence supports a finding that defendant had constructive possession of the guns.  Commonwealth v. McCollum, 945 N.E.2d 937, 945 (Mass. App. Ct. 2011) ("Where the defendant does not have actual possession of contraband, the Commonwealth may prove constructive possession.  Constructive possession requires that the defendant know of the presence of the contraband and have the ability and intention to exercise dominion and control over it." (citation omitted)).  Defendant presented no evidence of having an FID card for the guns and, given his status as a convicted felon on supervised release, he was unlikely to have been able to supply such identification.

I find that the Government has proven by a preponderance of the evidence that defendant possessed firearms without an FID card, in violation of Mass. Gen. Laws ch. 269, § 10(h)(1).

7

### 2.    Improper Storage of a Firearm

Defendant is also facing a state charge of improper storage of a firearm, in violation of Mass. Gen. Laws ch. 140, § 131L(a).  Under that statute, "[i]t shall be unlawful to store or keep any firearm . . . in any place unless such weapon is secured in a locked container or equipped with a tamper-resistant mechanical lock or other safety device, properly engaged so as to render such weapon inoperable by any person other than the owner or other lawfully authorized user."  Mass. Gen. Laws ch. 140, § 131L(a).

Officer Donovan testified that the two guns were found in a "tackle box type container" on the porch of defendant's residence and that another officer opened the box and found the pouches containing the guns inside.  That officers were able to open the box without resort to using a key or code to unlock it supports finding by a preponderance of the evidence that the guns were improperly stored.

### 3.    Felon in Possession of a Firearm

Although Probation's violation report did not directly charge defendant with violating a federal crime, the Government introduced evidence which supports a finding that defendant violated 18 U.S.C. § 922(g).  That provision prohibits a convicted felon from possessing a firearm.

"Section 922(g) contains three elements: (1) a status element, whether the defendant is a member of a prohibited category of persons; (2) a possession element, whether the defendant was in actual or constructive possession of a firearm; and (3) a jurisdictional element, whether the firearm moved in or affected interstate or foreign commerce prior to its seizure."  United States v. Bain, No. 14-cr-10115, 2021 U.S. Dist. LEXIS 80309, at *3 (D. Mass. Apr. 26, 2021).

8

Defendant is clearly a convicted felon given the proceedings herein.  As to the second element, the court has already found that defendant was in possession of a firearm.  Lastly, the Government introduced a firearms trace report from the Bureau of Alcohol, Tobacco, and Firearms, which showed that the guns found at defendant's home had been purchased outside of the Commonwealth of Massachusetts and so had traveled in interstate commerce.  (Ex. 9).  The Government has proven by a preponderance of the evidence that defendant violated § 922(g) through his possession of the guns found at his home.

### 4.   Assault With a Dangerous Weapon

Although initially charged with assault with a dangerous weapon in connection with the frying pan incident that Ms. Clark reported to Officer Donovan, defendant was not indicted on the charge.  Probation did, however, reference the charge in its violation report and the Government presented evidence in support of the offense.  Regardless of whether this charge is still pending in state court, the court may make a determination as to whether defendant committed the crime.  See Rentas-Felix, 235 F. Supp. 3d at 381 ("[T]he revoking court bases its decision, not on . . . [a] resulting state conviction, but on the evidence presented at the revocation hearing."); see also Frederickson, 988 F.3d at 85–86 (affirming a finding that defendant committed a crime for purposes of revocation despite acquittal on same charge in state court).

"[T]he elements of assault by means of a dangerous weapon are that a defendant committed an assault, and that the assault was committed by means of a dangerous weapon."  Commonwealth v. Anderson, 963 N.E.2d 704, 718 (Mass. 2012) (citing Mass. Gen. Laws ch. 265, § 15B(b)).  "[T]he central aspect of an assault is an

attempted application of physical force or a threat of the use of physical force, either by

an attempt to do bodily harm, or by placing the victim in fear of imminent bodily harm."

United States v. Hudson, 823 F.3d 11, 17–18 (1st Cir. 2016) (quoting Commonwealth v.

Gorassi, 733 N.E.2d 106, 110 (Mass. 2000)).

Although Ms. Clark's description of the altercation involving the frying pan is

hearsay reported by Officer Donovan, the court may consider hearsay evidence in the

context of a revocation hearing if the evidence is deemed reliable.  United States v.

Bueno-Beltrán, 857 F.3d 65, 68 (1st Cir. 2017).  Defendant argues that Ms. Clark had

reason to lie to Officer Donovan because she was upset about defendant's affair with

Ms. Rivera.  Yet Ms. Clark's statements regarding the guns found at the house were

accurate and reliable, as two guns were found in pouches just as she had described

them.  The court sees no reason to doubt her account of the frying pan incident when

other statements she made to Officer Donovan and others were accurate.

The court credits the account Ms. Clark made of the incident to Officer Donovan

and finds that defendant's threatened use of a frying pan was a dangerous weapon

meant to place Ms. Clark and their son in fear of imminent bodily harm.  Thus, in light of

the low burden on the Government in this context, the court finds that it has proven by a

preponderance of the evidence that defendant committed assault with a dangerous

weapon.

**B.      Associating With a Convicted Felon Without Authorization from
Probation**

Finally, the Government alleges that defendant violated the conditions of his

release by associating with Ms. Rivera, who had been convicted of a federal drug

offense some years prior.  In order to prove this violation, as the Government conceded,

it had to show that defendant knew Ms. Rivera was a convicted felon.  Ms. Lightowler testified that Ms. Rivera was forthcoming in discussing her conviction during their conversation, but that testimony alone was insufficient to support a finding that defendant knew about Ms. Rivera's conviction.  The Government has failed to meet its burden on this alleged violation.

### III.    Conclusion

The court finds that defendant has violated the terms of his supervised release by committing three state crimes: possession of a firearm without an FID card, Mass. Gen. Laws ch. 269, § 10(h)(1); improper storage of a firearm, Mass. Gen. Laws ch. 140, § 131L(a); and assault with a dangerous weapon, Mass. Gen. Laws ch. 265, § 15B(b). In addition, defendant has violated 18 U.S.C. § 922(g) by being a felon in possession of a firearm.

Sentencing is scheduled on September 28, 2021 at 2:00 p.m. in Courtroom 12.

__September 8, 2021__
        DATE

_____
        RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE

11